**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2091

HERBERT LEE PRINGLE,

           Plaintiff - Appellant,

    v.

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

           Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Florence. Thomas E. Rogers, III, Magistrate Judge.  (4:21-cv-02635-TER)

Submitted:  July 20, 2023                               Decided:  September 7, 2023

Before KING and RUSHING, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** W. Daniel Mayes, SMITH, MASSEY, BRODIE, GUYNN & MAYES, Aiken, South Carolina, for Appellant.  Adair F. Boroughs, United States Attorney, Maija DiDomenico, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina; Brian C. O'Donnell, Associate General Counsel, Taryn Jasner, Deputy Associate General Counsel, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Herbert Pringle appeals from the district court's order[1] upholding the Social Security Administration's denial of disability benefits. On appeal, Pringle challenges the Administrative Law Judge's ("ALJ") determination of Pringle's residual functional capacity ("RFC") and his consideration of the Department of Veterans Affairs' ("VA") disability rating. We affirm.

"When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson*, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," we defer to the Commissioner's decision. *Id.* (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include

---

[1] The parties consented to the jurisdiction of a magistrate judge.

a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). A five-step sequential process is used to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is not, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe." *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he does, the ALJ decides whether that impairment or combination of impairments meets or equals one of the listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If it does not, the ALJ assesses the claimant's RFC to determine whether the claimant retains the ability to perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he does not, the burden shifts at the fifth step to the Commissioner to establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy. *Mascio v.*

3

*Colvin*, 780 F.3d 632, 635 (4th Cir. 2015). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.*

Social Security Ruling ("SSR") 96-8p requires that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his . . . work-related abilities on a function-by-function basis, including the functions" listed in the regulations. SSR 96–8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* The SSR further explains that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 34,478.

Pringle first argues that ALJ improperly found that he had the RFC to perform light work, with no specific restrictions on standing or walking and no need for an assistive device. To the contrary, Pringle argues, he is unable to stand or walk for more than short periods, and he requires a cane when performing these activities. SSR 96-9p, 1996 WL 374185, *7, which concerns an RFC of less than a full range of sedentary work, discusses hand-held assistive devices. The Ruling states that, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."

4

Pringle asserts that the evidence in the record that he needed and used a cane was voluminous and that the attempt to portray his cane use as occasional or inconsistent was not substantially supported. However, the ALJ did not state that Pringle's cane use was occasional or inconsistent. Instead, the ALJ noted that, on some occasions, Pringle did not use a cane, and the ALJ appropriately considered this evidence in concluding that a cane was not medically necessary.

Pringle further asserts that the ALJ erred by failing to consider his ongoing complaints of burning sensations, pain, numbness, swelling, and paresthesia in his feet and toes and to his diagnoses of metatarsalgia, flat feet, dorsal boney exostosis, and abnormal gait. Pringle also avers that the ALJ did not consider his limited ability to walk both with and without a cane. However, the ALJ specifically outlined most of Pringle's complaints and noted that his conditions had been treated conservatively. Nonetheless, the ALJ rejected Pringle's assertion that his foot condition was progressively worsening, citing to unremarkable x-rays and an electromyogram and nerve conduction study and generally normal strength and sensation. Moreover, there was no medical evidence that any doctor had prescribed or suggested cane use or concluded that Pringle was limited in his ability to walk and stand, and the state consultative physicians specifically determined that a cane was not clinically supported. In short, while there was evidence that Pringle used a cane consistently and had certain documented foot conditions, the ALJ appropriately analyzed

the record, and his determination that Pringle could walk and stand without use of a cane was supported by substantial evidence.[2]

Pringle next asserts that the district court did not consider the extent to which his symptoms of sarcoidosis, in particular, shortness of breath, fatigue, and chest pain, would affect his ability to perform light work. First, Pringle argues that the ALJ improperly found that his conditions, while declining in Spring 2014, showed marked improvement in 2015 and 2016 through the use of steroids. Pringle relies on his self-reported inability to walk without getting winded. The ALJ, while recognizing that Pringle continued to complain of a decline in exercise tolerance, noted that pulmonary function testing showed improvement after steroids and pulmonary rehabilitation. Through the relevant time period, Pringle was prescribed inhalants, he did not require inpatient care, and his symptoms were not consistently present. Thus, the ALJ's finding that Pringle showed improvement in his pulmonary condition was supported by substantial evidence.

Pringle further claims that medical providers speculated that his shortness of breath may have been caused by water retention, cardiac sarcoidosis (as opposed to pulmonary sarcoidosis), diastolic dysfunction, or deconditioning. Pringle avers that his doctors never suggested that there was no basis for his symptoms, but instead were not sure which of his conditions was the primary cause. However, regardless of the cause, the ALJ noted that

---

[2] To further undermine the ALJ's analysis of his cane use, Pringle points to evidence in the record that he asserts supports his claim that a specialized cane had been medically ordered. However, our review of the cited records does not find any indication that a doctor ordered a specialized cane for Pringle or that a doctor considered the cane he used to be necessary for physical therapy or otherwise.

6

Pringle's complaints of chest pain and shortness of breath showed that these symptoms occurred only occasionally. This finding finds substantial support in the record. Moreover, it is undisputed that no medical tests supported a finding that Pringle's shortness of breath would impact his RFC in a greater way than found by the ALJ, and no treating or examining physician imposed limitations on walking or standing based on Pringle's shortness of breath or chest pain or otherwise. Further, the ALJ recognized Pringle's complaints of shortness of breath, chest pain and fatigue, but found that the objective medical testing was stable and that Pringle responded well to medication. Nonetheless, the ALJ found that Pringle's limitations would prevent him from climbing ladders or scaffolds regularly and would prevent him from working in temperature extremes, and the ALJ incorporated these limitations into the RFC. Accordingly, we find that the ALJ properly considered Pringle's symptoms and that the ALJ's determination of the RFC was supported by substantial evidence.

Finally, Pringle asserts that the ALJ failed to give appropriate weight to the VA's disability rating, specifically its rating of 30% for each lower extremity based on Pringle's frostbite injury. The ALJ gave the rating little weight, finding that the VA's own medical records did not document significant abnormalities or clinical findings regarding Pringle's frostbite injury to his feet and subsequent osteoarthritis.

In *Bird*, this Court interpreted then-existing federal regulations as requiring ALJs "to consider all record evidence relevant to a disability determination, including decisions by other agencies." 699 F.3d at 343. The *Bird* court held:

> [I]n making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

*Id.* at 343. In order to demonstrate that it is appropriate to give the VA's decisions less than substantial weight, the ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018). For example, an ALJ "could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence." *Id.*

Here, the ALJ carefully explained his reasons for giving the VA decision little weight, and those reasons are supported by substantial evidence. In particular, despite the VA's 30% rating in each lower extremity for frostbite injury, the ALJ noted that Pringle was able to work after his frostbite injury for numerous years as an electrician, a strenuous occupation. In addition, the ALJ relied upon the medical evidence (nearly all of which is from the VA's own treatment notes), which did not show serious abnormalities or significant limitations in strength or sensation. The ALJ also noted that Pringle's treating podiatrist did not document significant clinical findings or functional limitations.

Further, the ALJ considered the VA's 20% disability rating in each lower extremity for peripheral neuropathy/paralysis of the sciatic nerve. In so doing, the ALJ determined that Pringle's lower extremity neuropathy was a severe impairment and provided appropriate limitations in the RFC. Regarding the sciatic nerve, the ALJ noted that the

evidence did not document any such findings during the relevant time period, and Pringle does not dispute this finding. Based on the foregoing, we hold that the ALJ properly considered the VA's disability rating and provided appropriate reasoning for giving it less weight.

As such, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

9